UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSEPH D. PEISSIG,

          Plaintiff,

     v.                                            Case No. 20-CV-198

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

          Defendant.

## DECISION AND ORDER

### 1. Introduction

Alleging that he has been disabled since April 22, 2016 (Tr. 10), Joseph Peissig seeks disability insurance benefits. After Peissig's application was denied initially (Tr. 64-73) and upon reconsideration (Tr. 74-84), a hearing was held before an administrative law judge (ALJ) on July 27, 2018 (Tr. 28). On November 27, 2018, the ALJ issued a written decision concluding that Peissig was not disabled. (Tr. 19.) After the Appeals Council denied Peissig's request for review on December 10, 2019 (Tr. 1-4), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 7), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Peissig "has not engaged in substantial gainful activity since April 22, 2016[.]" (Tr. 12.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Peissig has the following severe impairments: "degenerative disc disease and stenosis of the lumbar spine, status post multiple surgeries with post-laminectomy syndrome; osteoarthritis of the right hip and left knee; carpal tunnel syndrome; obesity; and generalized anxiety disorder[.]" (Tr. 12.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the

claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Peissig "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 12.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Peissig has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except he must be able to sit or stand alternatively at will, provided that he is not off task more than 10% of the work period; he can frequently balance, crouch, kneel, stoop, and climb ramps and stairs, but can never crawl or climb ladders, ropes, or scaffolds; he can frequently reach laterally, handle, finger, and feel bilaterally, but can no more than occasionally reach overhead bilaterally; he can have no exposure to dangerous moving machinery or to unprotected heights; and he is limited to understanding, carrying out, and remembering no more than simple instructions and tasks.

(Tr. 14.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Peissig "is unable to perform any past relevant work[.]" (Tr. 17.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Peissig] can perform." (Tr. 18.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Peissig's RFC, age, education, and work experience could perform the requirements of order clerk, document preparer, and compact assembler. (Tr. 18.) After finding Peissig could perform work in the national economy, the ALJ concluded that he was not disabled. (Tr. 18.)

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve

conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

Peissig argues that the ALJ erred by (1) including in the RFC a requirement that Peissig be off task not more than 10% of the workday while exercising a sit/stand option; (2) failing to properly address his subjective symptoms; (3) failing to adequately account for limitations in concentrating, persisting, or maintaining pace; and (4) improperly limiting the weight of Dr. Jeremy Scarlett's medical opinion.

**4.1 Sit/Stand Option**

Peissig argues that the ALJ erred in stating in the RFC that "he must be able to sit or stand alternatively at will, provided that he is not off task more than 10% of the work period[.]" (Tr. 14.) He argues that this aspect of the RFC is not based on any finding that the need for a sit/stand option would actually result in him being off task for no more than 10% of the workday (a question that should have been posed to the VE) and "was

included in the RFC without acknowledging significant evidence that Peissig's impairments would draw him off task far more than 10% of the time." (ECF No. 16 at 8.)

The Commissioner responds that the off-task limitation is consistent with Peissig's own testimony that he could stand eight hours, walk 30 minutes, and sit an hour at a time. (ECF No. 20 at 15-16.) Moreover, the VE "expressed no concern at the hearing that alternating between sitting and standing would render an employee off task more than 10 percent of the workday." (*Id.* at 16.) As for the 10% limitation being "entirely arbitrary," the Commissioner states that "[t]here is no requirement that an RFC be supported by a specific medical opinion, as Plaintiff suggests." (*Id.* at 17.)

> Peissig testified at the hearing that
>
> on a bad day, "walking, standing, stuff like that" would bring his pain up to a level of 10. When his pain level is high, he must lie down for an hour or sometimes two. He had more bad days than good, with only one to two good days per week.

(ECF No. 16 at 11) (internal citations omitted). As in *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017), Peissig argues that his disability would require him to take frequent breaks (laying down for an hour or two on bad days, which are more frequent than not). (ECF No. 16 at 11.) He argues that this is evidence that he would be off task more than 10% of the work period, which the ALJ did not address when he asserted that Peissig could exercise the sit/stand option without being off task more than 10% of the work period. (*Id.* at 23.)

The ALJ did not actually find that, despite Peissig's testimony, he would actually be able to stay on task 90% of the time. Rather, he simply assumed that in the hypothetical he posed to the VE, who was never asked whether Peissig's sit/stand limitations could be accommodated with the 10% off task limitation. *See Pollari v. Berryhill*, 2019 U.S. Dist. LEXIS 10758, *5 (E.D. Wis. January 23, 2019).

It is the vocational expert's role to assess whether transitioning between sitting and standing would result in time off task. *Green v. Saul*, No. 19-CV-528, 2020 U.S. Dist. LEXIS 41061, at *15 (E.D. Wis. Mar. 10, 2020). The ALJ did not explain why the evidence supported a finding that Peissig would not be off task more than ten percent of the workday when transitioning to sitting or standing. On remand the ALJ must either ask the VE whether Peissig's sit/stand limitations could be accommodated with a 10% off task limitation or otherwise explain any finding he might make that Peissig would not be off task more than ten percent of the workday while transitioning to sitting or standing.

**4.2 Subjective Symptoms**

The ALJ found that Peissig's statements about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the evidence. In support of that finding the ALJ stated,

> In terms of his back, he has undergone two significant surgeries and has had routine pain management follow-up; however, only reported 5/10 pain during most recent appointments, and indicated fairly normal ability to sit, walk, and stand at the hearing. Furthermore, he has not been under an intensive pain medication regimen. His right hip and left knee conditions

appear no more than moderate in severity, based on the imaging. However, the combination of his back, hip, and knee conditions, along with obesity, warrant a limitation to sedentary work with additional postural and environmental restrictions. Manipulative limitations are included to account for the claimant's history of carpal tunnel syndrome and ongoing symptoms as described at the hearing.

(Tr. 16-17.)

Peissig argues that the ALJ did not consider the factors in 16-3p when he evaluated his subjective statements regarding his back, hip, and knee pain. (ECF No. 16 at 13.) He argues that the ALJ improperly ignored testimony "that walking and standing would increase his daily pain level of 6 to a level of 10. On bad days – which are frequent, that level of pain required he lie down for one to two hours." (ECF No. 16 at 14) (internal citation omitted). He also argues that the ALJ's assertion that Peissig's allegations were inconsistent with evidence "rests on a distorted presentation of the medical evidence" because the ALJ relied on the one medical appointment when Peissig reported his pain as a 5/10 even though he reported it as 7-9 at other pain management appointments in the preceding year. (*Id.* at 15.)

The Commissioner responds that Peissig "points to no objective evidence that the ALJ overlooked or misconstrued." (ECF No. 20 at 12.) He argues that contemporaneous reports to medical providers outside the pain management clinic indicate that his pain levels were below five at recent appointments. (*Id.* at 13.) With regard to Peissig's testimony that his pain level would increase on a bad day, the Commissioner argues that the ALJ was not required to discuss every piece of evidence. (*Id.* at 13.)

At the hearing Peissig stated that his daily pain level was "about six" and that "[w]alking, standing, stuff like that" would increase that pain from a six to "a ten plus on a bad day." (Tr. 48.) He stated that he has one or two good days throughout a week. (Tr. 50.) When the pain increases, he lays down for "an hour, sometimes two hours." (Tr. 49.) He stated that he thought that if he sat for two hours his pain "could be a seven, eight, nine… it depends on the day." (Tr. 50.) The court finds that, given this testimony, the ALJ did not support with substantial evidence his finding that Peissig "indicated fairly normal ability to sit, walk, and stand at the hearing." (Tr. 16.)

Peissig also argues the ALJ erred in characterizing his pain management regimen as non-intensive. (ECF No. 16 at 15-16.) The ALJ did not cite medical evidence that other, more aggressive forms of treatment were available to Peissig.

The Seventh Circuit Court of Appeals has held that an ALJ impermissibly "played doctor" when he "decided, absent any medical evidence, that [the claimant]'s condition was less serious because it was treated only with oral medication and not with insulin therapy." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). The court further found that "[t]he inference that it was not prescribed because [the claimant] was not experiencing significant problems appears to be the ALJ's own inference, and is wholly unsupported by the record." *Id.* at 677-78.

While some may disagree whether taking 15-20 tablets of ibuprofen daily, tizanidine (muscle relaxant), meloxicam (NSAID), tramadol (narcotic), nucynta (narcotic)

hydrocodone (opioid), topiramate (nerve pain medication), is properly characterized as having "not been under an intensive pain medication regimen," *see Cunningham v. Colvin*, No. 14-C-420, 2014 U.S. Dist. LEXIS 164005, at *21 (E.D. Wis. Nov. 24, 2014) (citing cases), the error here is not merely semantic. (Tr. 16, 557, 563, 672, 691, 727.) Peissig also underwent a caudal epidural injection, interarterial hip injection, and trochanteric bursal injection to address his pain. (Tr. 568, 666, 678.) In characterizing his treatment as non-intensive, the implication was that, if Peissig's impairments were as bad as he alleged, he would have received treatment that was more aggressive than pain medication and injections. However, the ALJ did not point to any medical evidence suggesting that more aggressive treatment might be appropriate for a person with Peissig's alleged subjective symptoms. *See Myles*, 582 F.3d at 677-78 (finding that, in the absence of medical evidence explaining why the claimant had not been prescribed insulin, the ALJ erred in suggesting that the absence of an insulin prescription demonstrated that the claimant's diabetes was not severe).

The ALJ erred in concluding that Peissig's hearing testimony and pain medication treatment was evidence that his statements about the intensity, persistence, and limiting effects of his symptoms were unsupported. (Tr. 16.) On remand, the ALJ shall reevaluate the intensity, persistence, and limiting effects of Peissig's symptoms.

**4.3 Concentrating, Persisting, or Maintaining Pace**

At step three the ALJ found that Peissig had moderate limitations in concentration, persistence, and pace. (Tr. 13.) In articulating Peissig's RFC, the ALJ found that Peissig "can have no exposure to dangerous moving machinery or to unprotected heights; and he is limited to understanding, carrying out, and remembering no more than simple instructions and tasks." (Tr. 14.)

Peissig argues, "[r]emand is also required under a straightforward application of the line of precedent providing that an RFC limitation to simple work does not adequately account for a claimant's deficits in concentration, persistence, or pace." (ECF No. 16 at 17.) He argues that the ALJ found he had a moderate limitation in concentration, persistence, or pace but "did not rest the hypothetical to the VE or the mental RFC on any opinion evidence and pointed to no other evidence to reconcile the mental RFC[.]" (*Id.* at 18.)

The Commissioner responds that there is "no evidence supporting further limitations" and Peissig fails to explain what additional limitations would be necessary to accommodate his moderate limitation in concentrating, persisting, and maintaining pace. (ECF No. 20 at 19.)

The ALJ must apprise the vocational expert of all of the claimant's symptoms, including limitations in concentration, persistence, or pace. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

However, an ALJ need not explicitly use the words "concentration, persistence, and pace" to apprise the vocational expert of the claimant's limitations in these domains. *O'Connor-Spinner*, 627 F.3d at 619. "Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); citing *O'Connor-Spinner*, 627 F.3d at 619; *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002)). However, "someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). But simply limiting the claimant to "unskilled work" is insufficient. *Id.* at 373.

"[I]n most cases 'employing terms like simple, repetitive tasks on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace,' and thus, alone, are insufficient to present the claimant's limitations in this area." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (quoting *O'Connor-Spinner*, 627 F.3d at 620) (internal citation omitted).

Jobs that involve "understanding, carrying out, and remembering no more than simple instructions and tasks" often involve productivity or efficiency expectations

which require an employee to perform persistently and at a designated pace. For example, the vocational expert identified the job of "compact assembler" as a job Peissig could perform, but such a job would likely come with production quotas that would be impacted by a moderate limitation in persistence and pace. *See* DOT 739.687-066. Same, too, with the order clerk, *see* DOT 209.567-014, and document preparer, *see* DOT 249.587-018, the other jobs identified by the vocational expert as jobs that Peissig could perform.

The ALJ did not explain how his finding that Peissig had a moderate limitation in concentration, persistence, or pace is accounted for in the RFC's limiting Peissig to "understanding, carrying out, and remembering no more than simple instructions and tasks." There is no medical opinion to that effect, and the ALJ did not point to any other evidence from which he concluded that a limitation to simple instructions and tasks was sufficient to account for Peissig's moderation limitation in concentration, persistence, or pace.

Accordingly, remand is necessary to permit the ALJ to reassess Peissig's RFC in light of her moderate limitation in concentration, persistence, and pace.

**4.4 Dr. Scarlett's Opinion**

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (unpublished) (citing 20 C.F.R. §

404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)).

While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (unpublished)).

Treating physician Jeremy Scarlett, M.D., opined that Peissig's symptoms would, among other things, likely be severe enough to interfere with his attention and concentration, likely require that he be off task more than 25% of a typical workday, limit his ability to maintain attention and concentration to less than one hour before requiring a break, and require that he be absent from work more than four days per month. (Tr. 850.)

> The ALJ gave Dr. Scarlett's opinion "little weight" because
>
> [h]is limitations are consistent with a less than sedentary exertional capacity, which is not supported by the benign objective physical examination findings noted in his records, nor [Peissig's] own reported abilities described at the hearing.

(Tr. 17.)

Peissig argues that Dr. Scarlett's objective physical examination findings were not benign; there were findings of tenderness to palpation and spasm when examining Peissig's back, along with reduced motor strength in the left gluteus medius, absent patellar reflexes, and obesity. (ECF No. 16 at 20.) He also argues that his reported abilities at the hearing were consistent with Dr. Scarlett's opinion when one considers the impact of frequent bad days. (*Id.* at 21.)

The Commissioner responds that Dr. Scarlett's opinion was extreme and contradicted Peissig's hearing testimony. For example, he argues that, although Peissig testified he could stand for six to eight hours, Dr. Scarlett opined he could stand less than one. (ECF No. 20 at 9.) He argues that the ALJ reasonably determined that Dr. Scarlett's exam findings of tenderness to palpation and muscle spasms in a single examination were not enough to support his opinion. (*Id.* at 11.)

Peissig has not shown the ALJ erred in his assessment of the weight given to Dr. Scarlett's opinion. The ALJ supported his decision to give little weight to Dr. Scarlett's opinion with substantial evidence. Dr. Scarlett opined to extreme limitations primarily based on one examination with tenderness to palpation and back spasms. Although Peissig's testimony can be interpreted as consistent with Dr. Scarlett's opinion, there are also inconsistencies between Dr. Scarlett's opinion and Peissig's testimony which support the ALJ's conclusion.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of March, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge